UNITED STATES DISTRICT COURT                FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ELIJAH LEGARE,
                                                              MEMORANDUM
                    Petitioner,                          AND ORDER
                                                              07-CV-4462 (JG)
    - against -

UNITED STATES PAROLE COMMISSION,
WARDEN, METROPOLITAN DETENTION
CENTER

                    Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
A P P E A R A N C E S :

       FEDERAL DEFENDERS OF NEW YORK, INC.
           16 Court Street, 3rd Floor
           Brooklyn, NY 11201
       By:    Jan A. Rostal
           Attorneys for Petitioner

       BENTON J. CAMPBELL
           United States Attorney
           Eastern District of New York
           271 Cadman Plaza East
           Brooklyn, NY 11201
       By:    Stephen J. Meyer
           Attorney for Respondents

JOHN GLEESON, United States District Judge:

       Elijah Legare is a 50-year-old cognitively impaired man who has spent the better

part of the last 25 years in prison for violations of federal parole imposed for a crime he

committed at the age of 19. He contends that his mental impairments and substance addiction

render him unable to comply with the conditions of parole in the absence of a structured

residential treatment program, and that his repeated cycle of incarceration and release interferes with his attempts to rehabilitate.

In this action, Legare petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the repeated revocation of his parole deprives him of his liberty without due process of law in violation of the Fifth Amendment and constitutes cruel and unusual punishment in violation of the Eight Amendment. For the reasons stated below, the petition is denied without prejudice to renewal if Legare still seeks relief after exhausting his administrative remedies.

## BACKGROUND

On February 8, 1977, Legare pled guilty to a charge of assaulting a mail carrier with intent to rob, and on February 25, 1977, he was sentenced to 25 years in prison. As his offense was committed before the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 and 28 U.S.C.), Legare was eligible for federal parole. On December 8, 1981, the United States Parole Commission ("the Commission") released Legare on parole after he had served approximately 5 years of his sentence in prison. Legare's parole was originally set to terminate on December 8, 2001. However, a series of parole revocations has led him to serve more than 14 additional years in prison, and has pushed his parole termination date to October 20, 2010.

Legare's first revocation took place on February 6, 1984, when the Commission ordered a 16-month revocation of parole due to Legare's admitted shoplifting, possession of marijuana, theft of a motor vehicle, and its finding of other violations of his terms of parole. Legare was reparoled and on October 12, 1987 his parole was revoked a second time, again for

2

16 months, for petty larceny and failure to report to his supervising officers. Legare's parole was revoked a third time on May 7, 1992, this time for 72 months, based on possession of marijuana, menacing, forgery, harassment and failure to report his arrests. The Commission found that Legare's conduct involved assault with a knife and a death threat.

Legare was reparoled on January 15, 1998. On September 9, 1998, the Commission revoked his parole a fourth time, this time for using illegal drugs. This revocation was for 24 months, above his 12-16 month advisory guideline range. *See generally* 28 C.F.R. §§ 2.20, 2.21. Legare administratively appealed this revocation, arguing that the above-guideline revocation was unwarranted and requesting placement in a residential drug treatment program instead of incarceration. This appeal was denied by the Commission's National Appeals Board ("the Appeals Board"). The Appeals Board affirmed the longer term of revocation and found that since community-based drug and mental health treatment programs had not stopped Legare from violating the terms of his parole, residential treatment was inappropriate.

After Legare's release from confinement, he waived his right to a revocation hearing and consented to a fifth revocation of his parole on April 2, 2002, based on charges of criminal trespass, disorderly conduct, criminal possession of stolen property, and violation of his reporting requirements. After serving this 20-month revocation, Legare was reparoled. He completed a 90-day inpatient drug treatment program successfully, but relapsed when he was moved from the inpatient treatment for funding reasons and placed in community confinement in a residential re-entry center ("RRC").[1] Accordingly, he had his parole revoked a sixth time on

---

[1] *I.e.*, a halfway house. *See Scott v. Lindsay*, No. 07-CV-2622 (JG), 2007 WL 2585072, *1 n.1 (E.D.N.Y. Sept. 10, 2007); *see also* 28 C.F.R. § 570.20.

March 30, 2005 for use of drugs and alcohol and failing to comply with community confinement, leading to an above-guideline revocation of 22 months. At the hearing on his sixth parole revocation, both Legare's supervising officer and an examining psychologist opined that Legare would be likely to relapse unless placed in a structured environment, and Legare's supervising officer recommended further inpatient treatment.

Upon his release, Legare participated in programs at two outpatient community rehabilitation centers, the Exodus Transitional Community, Inc. and the Aguilar Language Learning Center. Legare states, and the government does not contest, that he was returned from his RRC to the Metropolitan Detention Center-Brooklyn because his "daypass" allowing him to leave the RRC "misidentified his attendance at the Aguilar Center rather than the Exodus Center," which his counsel claims was a mistake likely due to his illiteracy. Pet. ¶ 14. Legare also claims that the Bureau of Prisons incarcerated him as an administrative sanction and recommended that the Commission administratively revoke Legare's parole for 30 days, and that Legare remained in custody for five months, during which it formulated a release plan. When he was reparoled on January 16, 2007, there was "no meaningful plan" for his release and he was placed in a drug-infested shelter. Pet. ¶ 15. By the time that the Probation Department was able to place Legare in an inpatient treatment program, five months had elapsed since his release and he had reverted into drug use, causing him to fail to appear for transport into the inpatient program. As a result, he was arrested on July 11, 2007.[2]

---

[2] The claims in this paragraph are found in Legare's petition, prepared by his counsel. They are corroborated in part by documents indicating his participation in the Aguilar and Exodus programs and the Commission's attempts to formulate a release plan, but are not fully documented. They are not contested by the government.

This arrest led to Legare's seventh parole revocation, for which he is currently in custody. At the revocation hearing, Legare's supervising probation officer indicated that punishment did not have an effect on Legare due to his cognitive impairment. On October 19, 2007, the Commission revoked his parole for 16 months, the maximum under the advisory guidelines. Legare has administratively appealed this revocation, but the Appeals Board has not yet heard his appeal. The revocation will last until November 10, 2008. Legare's parole termination date, pushed back due to his history of violations, is currently October 20, 2010.

## DISCUSSION

A. *Exhaustion of Remedies in § 2241 Cases*

Generally, a federal prisoner may not file a petition for a writ of habeas corpus under § 2241 without first exhausting all available administrative remedies. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). However, the exhaustion requirement applicable to § 2241 petitions is "prudential, not statutory," *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005); *see also Arango Marquez v. INS*, 346 F.3d 892, 897 (9th Cir. 2003) ("'District courts are authorized by 28 U.S.C. § 2241 to consider petitions for habeas corpus. That section does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001))), and therefore may be waived when "'(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question,'" *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)); *see also Beharry*, 329 F.3d at

62 (holding exceptions to exhaustion requirement applicable when requirement "is judicially imposed instead of statutorily imposed").

B.      *Legare's Failure to Exhaust*

It is uncontested that Legare's claims will remain unexhausted until the Appeals Board decides his appeal. I do not find it prudent to waive the exhaustion requirement in Legare's case. This is not a case where "available remedies provide no genuine opportunity for adequate relief," *Beharry*, 329 F.3d at 62. As Legare conceded at oral argument, the Appeals Board could order the relief he requests. Nor, unlike other cases where courts have waived the exhaustion requirement, is the administrative appeal futile. Courts have found exhaustion to be futile when the challenged action is taken pursuant to an agencywide policy administered without individual consideration. *See, e.g.*, *Scott*, 2007 WL 2585072, at *2 (finding exhaustion futile when agency action was required by program statement); *Pimentel*, 367 F. Supp. 2d at 371 (similar, citing cases). Here, to the contrary, the Appeals Board will consider not merely circumstances that may differentiate Legare from other parolees,[3] but also the circumstances that may differentiate this revocation from Legare's previous revocations. While the Appeals Board has rejected similar challenges from Legare before, here it has a different record to evaluate, given that Legare's probation officer stated at the hearing that Legare's cognitive impairment rendered punishment ineffective; that the events leading to his most recent revocation may

---

[3]      Indeed, the Commission's proceedings gave individualized consideration to Legare's situation. The hearing examiner suggested that leniency beyond that extended to similarly situated individuals would be inappropriate, but acknowledged that Legare's unusual circumstances counseled in favor of a lower sentence. These considerations apparently led the examiner to recommend a revocation at the top of the guidelines range instead of above that range. The Appeals Board, in reviewing this decision, will be able to consider whether there are individuals who are truly similarly situated and are denied the leniency that Legare requests, and whether Legare is differently situated from the other individuals who receive revocations at the top of the guidelines range for similar offenses.

provide some support to his argument that his parole conditions interfere with his rehabilitation; and that the cumulative effect of his cycle of revocation and violation will be considered. I am confident that the Appeals Board will discharge its duty to give careful and particularized consideration to the full record presented to it by this appeal, and thus do not find the pursuit of administrative remedies futile.

I am not persuaded to waive the exhaustion requirement by the fact that Legare's claim is constitutional, *see Able*, 88 F.3d at 1288 ("[T]he presence of constitutional issues alone does not create an automatic exception to the exhaustion requirement." (citing *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312 (1967) (*per curiam*)), or that he alleges that continued incarceration would interfere with his rehabilitation and constitute irreparable injury, *cf. Giwah v. McElroy*, No. 97-CV-2524 (RWS), 1997 WL 782078, *4 (S.D.N.Y. Dec. 19, 1997) (analyzing § 2241 challenge to detention pending removal proceedings and noting that if "incarceration alone" qualified as irreparable injury, "the exception would swallow the rule that the INS administrative remedies must be exhausted before resorting to federal courts").

Legare is 50 years old and cognitively impaired, and his recent violations all appear to stem from his substance addiction. He has been subject to a series of revocations either above or at the top end of the guidelines, even when incarceration does not appear to be deterring him or assisting him to rehabilitate. Indeed, he presents some evidence that his periods of incarceration actually interfere with his rehabilitation. While he thus presents a sympathetic case for some form of relief, the Appeals Board is in a better position to fashion a remedy than a habeas court. The Appeals Board is empowered to assess whether legitimate penological interests are served by revoking Legare's parole; to balance such interests against the costs of

7

that approach; and to determine what course of action is a worthwhile expenditure of its supervisory resources. In reviewing a § 2241 petition, I am authorized to undertake such analysis only to the extent necessary to determine whether Legare's custody complies with the Constitution and laws of the United States, which is a more limited inquiry. For these reasons, I do not find it prudent to waive the exhaustion requirement here.

## CONCLUSION

For the reasons stated above, the petition is denied without prejudice to renewal should Legare still seek relief after the Appeals Board decides his administrative appeal.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: January 3, 2008
      Brooklyn, New York